Good morning. May it please the court, my name is Poorvi Patel and with Michael Baldock we represent the appellant Bernie Mendia. Good morning. If I may, I'd like to reserve three minutes for rebuttal. Sure. Keep your eye on the clock, please. The central question posed by this appeal is what redress does a U.S. citizen have when an Immigration and Customs Enforcement agent unlawfully lodges a detainer against him? The answer, of course, is it depends. For Mr. Mendia, it depends on whether this court agrees that as a pleading matter he's adequately alleged that the detainer caused his prolonged detention. It doesn't depend, as the district court decided and as the appellees say, on the custody analysis. It doesn't depend on whether he was in... based on the ICE detainer unlawfully interfering with his bail interest? It is. I mean, the constructive detention is more of a term that we've been using to try and describe the causal effect that the detainer had on Mr. Mendia's detention. You know, the evidence in the complaint, at least, shows that Mr. Mendia attempted to post bail. He attempted to get bail bondsmen to post bail. And the response he got when he called these bondsmen is, no, no way, we're not taking that risk on because you have this immigration detainer lodged against you. At some point he was granted O.R. release. He was. It's not clear from the allegations in the First Amendment complaint when that is. So I take it, or I'll ask you, do you agree that from the point that he was granted O.R. release forward, there may not be a cognizable injury? It's possible that a court could find that. But our position is that Mr. Mendia had a reasonable fear that if he accepted the grant of own release, release on his own recognizance, that he would be remanded into federal custody. I thought the government made a nice point that, okay, well, if that's true, then why was he trying to get out with the bail bondsmen? The temporal allegations of the complaint, and this isn't on the record, but there is, as Judge Wynn noted, some lack of clarity in when the grant was given. It's equally as plausible, and this is something that could be cleaned up in an amended pleading, that at the time that Mr. Mendia was seeking to post bond, it was early. It was in the first six months or so of having the detainer lodged against him. And later, after having two encounters with the agents and showing affirmative proof of U.S. citizenship, it wasn't removed. He began to fear that maybe this is going to be a bigger problem than I think, and I don't want to risk getting out there and risking my state case. So there is a growing progression. That isn't in the First Amendment complaint, though. It isn't in the record. That's correct. I think you're really swimming upstream on the period where it's his own choice not to walk out of jail on his own. I mean, that just seems like a real stretch. So maybe you could focus on the period when the bail bondsman is the causal problem. Of course. So immediately after Mr. Mendia was remanded into custody, he began contacting bail bondsmen to seek if they could post the bond. He is proceeding post say. We got the facts. Sure. They're pretty simple. But let me just put it in these terms. The government portrays the hold as basically just a notice to authorities that, hey, we're conducting an investigation into this person, right? And I guess my concern about accepting your theory of causation for standing purposes is that, I mean, the government conducts all sorts of investigations of people that cause negative impacts on their lives, like maybe not being able to post bond or I mean there's a thousand other things. And it just I don't see any stopping point if we were to credit your causation theory here. Why isn't the fact that the government has made known that you're under investigation for X, Y or Z has now caused, let's say, problems with your ability to practice law? Why can't you then sue the government if you show that that action was wrongful for all of the negative economic consequences that followed? You very well may be able to. And the area, this area of law is evolving. And one of the supplemental authorities that we filed yesterday is a case out of the Northern District of Illinois. In that case, there was an unlawful detainer lodged against a U.S. citizen. It's an interesting factual pattern because the defendant in that case was eligible to participate in a boot camp. And because of the detainer, the Illinois Department of Corrections decided you're not eligible for the boot camp anymore. You're going to maximum security prison. He spent 70 days in maximum security prison because of that unlawful detainer. And the district court found that there was a sufficient causal link for the case to proceed. At this point, we're not dealing with the merits of either our case or the Mikowski case that we submitted yesterday. It's a pleading issue. Is there enough alleged for the case to go forward? It may turn out in discovery that there's enough conflicting evidence that we don't have a win on the merits. Yeah, I know I hear you. But, I mean, the case law as I understand it to this point has been pretty clear that if your injury is actually caused by the independent actions of some third party, right, you don't have standing. And I just, all I'm saying is that if we accept your argument, that rule basically gets thrown out the window. I don't see how you reconcile those two. The two cases relied on on that point is the Big Timber case where the EPA. Is that the Barnum case? I don't know. It is. I'm sorry. Yes, the Barnum, Barnum. It involves timber. I remember that. Yes, Barnum timber. Barnum timber. I'm a Midwesterner by, you know, thinking about the Northern District of Illinois and I used to take the Big Timber line all the time. But in any event, the Barnum timber case, in that case the EPA issued a posting that said that the property the plaintiff had was somehow contaminated. And as a result, they were not able to achieve kind of the economic realization that they normally would have. The other case that we relied on is the City of Lakewood case. I'm sorry. The City of Lakewood case, which involved a cabaret business and the ordinance that was issued that caused an economic loss to the owner of the business because patrons weren't coming to the establishment anymore, they weren't tipping as much, and therefore the business was able to find employees. And in both of those cases, this court found enough of a proximate cause, even though the injury was directly caused by a third party and tied it to the conduct of the government. Well, in both of those cases, I'm not sure this is a valid way to distinguish them, but the difference is that there was harm to somebody's property that they owned. It wasn't just some kind of consequential economic loss that was caused, right? There wasn't economic harm, but here we have a harm to liberty. I mean, Mr. Mendia was entitled at the time that the court set bail to be free on pretrial release, and he essentially served time for punishment for a crime before trial. And that is definitively a due process violation. Because the allegation that he, if I recall correctly, alleges in the complaint is that the denial of bail was solely due to the wrongful or unlawful ice hole that the agents had placed on him, right? So it then, under your theory, interfered with his substantive due process interests. That is how it's alleged in the complaint. And the law is it doesn't have to be the sole cause, just the proximate cause. And your theory then is that the agent's placing of the wrongful ice hole basically caused the third party bail bond people not to secure his bond or provide a bond for him to be released. Is that right? That's correct. So maybe talk about that San Diego gun case. Why is that different in your view? I'm sorry. I should talk into the mic. You know, it's ‑‑ I recognize that there we're just talking about broader market forces, but why? There is something similar about your claim that the filing of one of these holds causes this market effect in the bail bondsman market. There is a similarity there. So maybe you could explain why you think that's the same thing. I mean, our view is this was a very individualized harm. It's not every single ‑‑ we're not filing a lawsuit on behalf of every single detainee that could potentially be in this position. Your causation theory is very much tied to the fact, I don't even know if it's a fact, but you claim it's a fact, that when one of these holds gets placed on you, you are shut out, essentially, from the bail bond market, right? On our facts, yes. There is case law out there where bail bondsman will postpone, and then they litigate whether that bond has been forfeited if someone gets deported. So this area is pretty mixed. But on our factual pattern, yes. Tell me if you think there's a difference between these two cases. Let's say that your client, instead of being refused business, was just charged double the price and then sued the government to recover the Delta, right? That, to me, I mean, isn't that just like the San Diego gun case? The government's action has the market effect of raising the price, and you want to sue for the damage caused to you by that. And we said, no, I just don't see any real difference from a conceptual theory why your client is saying the effect on the market is not to raise the price, it's just to shut me out altogether. Okay, well, so what? It's just a more severe market effect, but why is it different in a conceptual sense? I think the so what is the nature of the harm. I mean, here there is a liberty interest that was violated by the lodging of the detainer. At the end of the day, I mean, we're not talking about economics here. We are talking about someone spending time in custody that he otherwise shouldn't have. All right, do you want to save the rest of your time? I would. Thank you. Good morning, Your Honors. Lana Bahab on behalf of the government defendants in this case. Is there any particular questions that you have for me that you'd like me to address in the first instance? Of course. I mean, Barnum seems to me a very difficult case for you, so I'd love to hear. Sure, Your Honor. In Barnum-Timber, we're talking about a natural consequence of the government's actions. The government takes a creek that runs on your land and puts it on a list of polluted creeks or something like that. Of course that affects the price of your land. That is a natural, objective consequence of a government action. Here we're talking about the government issues a form that says we're looking into whether this person might be removable. Isn't it just as logical, if not more so, in this case? Well, Your Honor, as you heard, there are plenty of bail bondsmen that do actually post bail for ‑‑ We're talking about the pleading stage, right? Sure. And so under the pleading stage, we have to accept all the factual allegations as pled in the complaint, or the First Amendment complaint in this case, as true. So what he's saying is that all of the bail bondsmen that he contacted refused to provide bond. And so I don't see why it's implausible. Sure. Let me just conclude that bail bondsmen would refuse bond, given that they're going to basically put out bond for somebody who's going to disappear via deportation. Well, first of all, a detainer doesn't say the person's going to disappear via deportation. It simply says that the person may be picked up by ICE. Now, all the bail bondsmen are interested in is that this person show up to their court date. Why would somebody not show up to their court date if they're actually in the custody of a federal authority that's going to transport them to that court date? So actually there is nothing logical about that. Because they're going to be deported and they won't be in the country. That's the risk. But I just don't think that's ‑‑ the line of argument you're pursuing doesn't seem to me very fruitful, because all you're saying is that, well, he's probably not going to be able to prove that the detainer hold really had the marked effect he's alleged. That's a merits inquiry. As Judge Wynn said, we've got to accept what he's alleged. Sure. And so just take it as a given. Sure. I guess. Wait. Hang on. Let's just say it was so clear that the effect of placing one of these holds had that it really did mean. It was so obvious that we could take judicial notice of the fact that as soon as one of those holds gets placed, nobody in the country can ever get bond. Let's just take that as the set of facts. Okay? So why under Barnum doesn't he get to go forward? Well, Mr. Mendea has a right to bail. Bail was set here. Mr. Mendea doesn't argue that he came to the clerk's office or someone came on his behalf. He posted the full bail and they said, uh‑uh, you have a detainer on you. We're not going to let you out as happened in some of the other cases that Mr. Mendea cited in his opening brief where people actually posted bail or the court, the judge actually said you actually ordered the county or state facility to release them and they weren't allowed to leave because of the detainer. So his right to bail, his right has not been violated. He doesn't argue that the court raised the bail amount or that they canceled the bail. He had a right to bail. He could have posted that bail amount at any time. Okay. What he's really arguing is that somebody wouldn't lend him money because of certain things. As your honor said, he could also ‑‑ he could have said that his girlfriend broke up with him because he had a detainer on him and that made her think, gee, he's going to be removable. Can he then sue for that harm? Well, let's say that the effect of placing the hold was to cause the state judge in his case to double the amount of the bail he would have to post. That would be a very different scenario. We would then have to look at what the detainer says on its face, which, again, to emphasize, as the government emphasized in its briefing, is this detainer is for notification purposes only. It should not affect the housing. Yeah, I know. We've seen it. But let's say the state judge says on the record, you know, I don't care what the notice says. In my mind, it has this effect on your ‑‑ the likelihood you're going to show up and, you know, 50,000, that might have been okay before. It's 100,000 now. That would be certainly a closer scenario. And I think Mr. Mendia cited in his opening brief a case in New Jersey where that actually did happen, a state court case in New Jersey where the bond was raised. Potentially there he might have seen, but that's not the case before us. Nobody messed with Mr. Mendia's bank. Why is it different from a ‑‑ just again, conceptually, it's no different. If the rule you're invoking is that the independent actions of a third party don't confer standing, well, the action that's causing harm is by this judge. He's totally independent. He's a third party in the truest sense. So why conceptually are you saying that he might have standing there but not here? Well, Your Honor, I'm not conceding that he would have standing. I'm saying that it's a closer ‑‑ it might be a closer situation where we would have to look at the interplay between ‑‑ I don't see how it's a closer case. You're talking about proximate causation, talking about whether the conduct that's at issue in this case, the placement of the ICE detainer hold impacts the third party's conduct or willingness to enter into transaction is what he's saying. The placement of the ICE hold interferes with the third party, the bail bondsman's willingness to secure my bond. Because now, from their perspective, the risk of deportation means that I'm likely not to show up in court. Sure. So I don't know that one scenario is necessarily any closer than the other. Your Honor, one thing to keep in mind about bail bondsmen is that they don't have the greatest reputation, unlike a state judge. The Ninth Circuit has noted that they are in the business in order to make money and not acting out of a high‑minded sense of devotion to the administration of justice. So this is essentially a bank with a bad reputation, right? So they can take a million different considerations in deciding whether to post bail on someone's behalf. The fact that here they may take into consideration ‑‑ It sounds like those are questions for some rejudgment, right? Accepting his allegations as true is really the risk of deportation and not appearing in court that's caused the bail bondspeople to deny him. That may very well be true, but that's not an objective consequence. And that is a ‑‑ that's the interfering cause that's breaking the link between him posting his bond. This isn't a situation where, again, he walked into court, he posts his bond, as happened in a number of the cases around the country where the courts have allowed the case to proceed. And, you know, they're unlocking the door for him and they say, oh, wait, you've got a detainer on you, we're now going to hold you to let ICE pick you up. Where one could argue there really is an interference with bail. Here he's talking about an investigation was started, a third‑party bail bondsman didn't like that, thought and decided not to do business with me. Again, Your Honor raised an example of there's lots of instances where the government does investigations. For example, if I got a letter that said we're auditing your taxes, and I was applying for a mortgage, and a bank said, gee, you know what, they're auditing your taxes, what if you owe a bunch of money back to the government, and maybe we should decline to extend a mortgage to you, can I then sue the IRS and say that a mortgage was declined to me because you began this audit, which, by the way, turned up nothing, my taxes were totally clean. I mean, when you're getting to that level of attenuation, you're really breaking the ‑‑ If the IRS wrongfully targeted you without basis, and then that interfered with an economic interest, you might have a case. We're talking about pleading allegations here. And here he's saying that knowing that he was a U.S. citizen, they still placed a malicious ICE hold on him. So we've got to take it as he's pleading. Sure, Your Honor. Accepting his allegations is true. Let's say that the detainer was erroneously placed. It was harmless. Why was it harmless? Because it never caused him to be transferred to ICE custody. It never changed the terms of his confinement. He's not arguing that he would otherwise have been placed in some sort of a work situation or halfway house situation because of the ICE detainer. He was moved to some sort of a special prison, as has been argued by some of the other cases. He's not saying that the court changed the amount of his bail. All he's saying is ‑‑ Well, wrongful imprisonment is a cognizable injury. But Mr. Mendia, the entire time, was a pretrial detainee on criminal charges. And getting back to the O.R. issue, which I think is very important here, the own recognizance issue, actually, Mr. Mendia, in paragraphs 56 to 60 of the First Amendment complaint, says that in both the facilities he was held, first he was held in the Contra Costa facility, then he was moved to an Alameda facility, in both facilities, own recognizance release, that is, free release, was available to him, and he chose not to avail himself of that. Surely that breaks the causation between the detainer and his alleged inability to be released. Under his allegations, and construing it in the light that's favorable to him, was there a period of time that he wasn't eligible for O.R. release? As far as I read his complaint, and again, I would draw your attention to paragraphs 56 to 60, he says in both of the facilities where he was held, and he claims he was held in two facilities, Alameda and Contra Costa, in both facilities, he was eligible for own recognizance release. From the get-go? Or was there a period of time of hours or days? Because he's talking about trying to secure a bond. So to me, the inference is that there was a period of time that he was granted bail, but wasn't able to post bail, and then at some point O.R. became available. Is that how you read it as well? No, I don't read it that way. I know that Mr. Mendia's counsel has attempted to rescue his complaint and construe it that way, but that is not how it was pled in paragraphs 56 through 60. I would also note that because this, we're talking about the court's jurisdiction, and we can look at jurisdictional facts, as the district court did in this case, Mr. Mendia, while exhausting the FTCA action with the agency, wrote a letter to the agency saying, I am now looking into how bail bondsmen would have posted bail for me had I contacted them. So actually, and this is consistent with the first complaint he filed before he amended it. He actually does not allege in his first complaint that he ever contacted any bail bondsmen, that he simply assumed that they would not work with him. It was only after the government filed a motion to dismiss of the first complaint and said, hey, he doesn't even allege he contacted any bail bondsmen. Mr. Mendia studiously filed a First Amendment complaint saying, oh, yeah, actually I did, even though that contradicts the letter that he wrote to ICE counsel. Was this a dismissal with prejudice or dismissal with leave to amend? This was a dismissal with prejudice, because this was Mr. Mendia did ask for another opportunity to amend his complaint, but because he had sought many continuances to amend and did in fact have the opportunity to amend, the court declined to allow him to amend, finding that on the facts as pleaded, Mr. Mendia cannot show an injury. If I can just take a moment to address the Ninth Circuit Garcia v. Taylor case, which we haven't talked about yet. I know that Mr. Mendia studiously tries to distinguish Garcia v. Taylor, says, hey, that's a habeas case, has no application here. The government disagrees. Garcia v. Taylor says a bare detainer unaccompanied by anything else does not amount to custody. Now, what is custody? Custody has been well defined as a restraint on one's liberty, not shared by the public at law. If a bare detainer, which is what we have here, could amount to the kind of injury that Mr. Mendia complains of here, over-detention or constructive detention or whatever it is that he's alleging, then Garcia v. Taylor was wrongly decided, because that type of injury, over-detention or constructive detention, would be a restraint on one's liberty not shared by the public at large. And that is exactly what Garcia v. Taylor, as well as every other circuit other than the Seventh, has held a bare detainer cannot do. It does not amount to custody. In fact, one of the cases that counsel attached to her 28J letter, an 11th Circuit case, again reiterated this, even though 11th Circuit had previously held this already. Another, the Murkowski case that counsel attached to her 28J letter out of the Northern... I think your argument is, the actual rationale of Garcia, I think, undercuts your argument to some extent, because to the extent that the district court here found that the ICE hold doesn't give the federal authority any, the federal government wouldn't have authority to take him into custody, his allegation is that they misused the ICE hold to, in effect, maintain his custody. Your Honor, I think what Garcia v. Taylor is saying is that while you're serving a sentence and you've got a detainer on you, an ICE detainer, all that detainer is saying is, hey, when you're done, when this person is done serving their time with you or you're done dealing with their criminal charges or whatever, we have interest in this person. Please contact us. We may come and assume custody of him. And that letter does not amount to custody. Therefore, it does not amount to a restraint on one's liberty not shared by the public at large. And that is precisely what Mr. Mendee is complaining of here. He's saying this detainer caused me a restraint on my liberty not shared by the public at large. Well, in that case, this court would need to overturn Garcia v. Taylor, because Garcia v. Taylor says that a detainer does not amount to a restraint on one's liberty not shared by the public at large. All right. Thank you. Any questions? Thank you very much for your argument. Thank you. I think the one important point to remember about Garcia v. Taylor and all of the other circuit decisions that have held that a bare detainer letter doesn't equal custody is they're all habeas cases. And habeas cases start with actual physical custody. It's a different analysis than for a Bivens claim or an FTCA claim. And the other case we submitted as supplemental authority yesterday analyzes the claims that are arising out of an illegal detainer. It's a short opinion, but when it looks at the habeas-based claim, it says there's no custody. I'm affirming the dismissal. When the court looks at the Bivens claims, it just says the plaintiff sued the wrong defendant. Shouldn't have sued ICE, should have sued the individual agents in their individual capacity. Affirming dismissal without prejudice. So that plaintiff can now go back and file another suit, presumably suing the right defendants under Bivens for this unlawful detainer. All we're asking is for the case to go forward at the pleading stage. There's a lot of discussion about what Mr. Mendia has or hasn't alleged. Conflicts in various papers that have been in the record. Those conflicts are merits issues that can be resolved either at summary judgment or at trial. They're not pleading issues. Unless the court has questions, I have nothing further. All right. Thank you very much. Mendia v. Garcia will be submitted for decision.
judges: Noonan, Nguyen, Watford